**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TAMMY WARREN ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 23-7432** |
| **CARE AND DEVELOPMENT CENTER, INC. ET AL.** | **SECTION I** |

### ORDER & REASONS

Before the Court is a motion[1] to certify a collective action class filed by plaintiffs Tammy Warren ("Warren") and Anthony Badon ("Badon") (collectively, "plaintiffs"). Defendants Care and Development Center, Inc. ("Care and Development"), Gilbert Charles ("Charles"), and Laverne King ("King") (collectively, "defendants") oppose the motion.[2] Plaintiffs filed a reply.[3] Plaintiffs also filed a request for oral argument.[4] For the reasons that follow, the Court denies the motion to certify a collective action class and denies the request for oral argument.

### I. BACKGROUND

This matter arises out of defendants' alleged failure to pay overtime pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiffs' complaint alleges that defendants "run a business providing services to persons needing home care givers."[5]

---

[1] R. Doc. No. 25.
[2] R. Doc. No. 32.
[3] R. Doc. No. 33.
[4] R. Doc. No. 26.
[5] R. Doc. No. 1, ¶ 10.

Plaintiffs contend that defendants signed contracts with clients who required home care services and then retained workers to perform those services for the clients.[6]

Plaintiffs worked for defendants as direct service workers ("DSWs").[7] Plaintiffs allege that, during their employment, they worked in excess of 40 hours per week, but that they were not paid overtime for the hours worked in excess of 40 hours per week because they were wrongly classified as independent contractors in violation of the FLSA.[8] Plaintiffs seek to "recover unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and all other damages owed to [p]laintiffs and all similarly situated employees of [d]efendants that were wrongly classified as exempt from the overtime provisions of the FLSA and/or were wrongly not paid overtime under the FLSA."[9]

In their motion for collective action certification, plaintiffs seek to certify as members of a collective action:

> All persons who worked for Care and Development Center, Inc. as a DSW from 2021 to the present who worked more than 40 hours a week, but were not paid for all of the overtime that they worked due to Defendants' policy of classifying them as independent contractors or "1099 employees" and not paying overtime on all hours worked in excess of 40 hours per any given 7-day work period.[10]

---

[6] *Id.* ¶¶ 20, 21.
[7] *Id.* ¶¶ 12, 25.
[8] *Id.* ¶ 25.
[9] *Id.* ¶ 26.
[10] R. Doc. No. 25, at 1.

Plaintiffs argue that they "are similarly situated to the class members they seek to represent, no individualized defenses exist which would preclude certification, and certification will undoubtedly serve the interests of the FLSA and judicial economy."[11]

In response, defendants argue that the DSWs are independent contractors who do not have standing to raise claims for overtime pursuant to the FLSA.[12] Additionally, defendants argue that plaintiffs' motion places undue emphasis on documents created by Warren without the knowledge, consent, or approval of Charles, the company's owner.[13] Next, defendants argue that a collective action is untenable in this case because Warren is differently situated from other DSWs and because certain defenses exist only with respect to her claims.[14] Defendants also argue that plaintiffs have failed to provide sworn affidavits identifying other similarly situated persons who will seek to join the lawsuit.[15] Finally, defendants argue, if certification is granted, the proposed notice should be modified to avoid suggesting that the Court has decided the merits of the case, to reduce the opt-in period, and to no longer require text notification of potential class members.[16]

In reply, plaintiffs argue that they need not prove the merits of their claims at this stage, but rather that they need only prove that the proposed class members are similarly situated.[17] Plaintiffs also argue that defendants treated all the DSWs the

---

[11] *Id.*
[12] R. Doc. No. 32, at 9.
[13] *Id.*
[14] *Id.* at 11.
[15] *Id.* at 14.
[16] *Id.* at 14–20.
[17] R. Doc. No. 33, at 2.

same and therefore no individualized analysis is required.[18] Plaintiffs suggest that the fact that the DSWs were similarly situated overcomes any individualized determinations that might be necessary with respect to defendants' alleged defenses.[19] Finally, plaintiffs argue that their proposed notice has been adopted in substantially the same form in other cases and need not be modified.[20]

## II. STANDARD OF LAW

The FLSA requires employers to pay covered employees a minimum wage and overtime rate. *Bancroft v. 217 Bourbon, LLC*, No. CV 21-545, 2022 WL 19762095, at *3 (E.D. La. Jan. 26, 2022) (Ashe, J.). "If an employer violates the FLSA's minimum wage or overtime provisions, it is liable to the employee for the employee's unpaid minimum wages or unpaid overtime compensation, as well as 'an additional equal amount as liquidated damages.'" *Id.* (quoting U.S.C. § 216(b)). Additionally, successful plaintiffs are entitled to recover reasonable attorneys' fees and costs. U.S.C. § 216(b).

"[A]n FLSA case may be brought 'by any one or more employees for and [on] behalf of himself [ ] and other employees similarly situated.'" *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (quoting 29 U.S.C. § 216(b)). "A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged

---

[18] *Id.* at 5.
[19] *Id.* at 7.
[20] *Id.*

4

[unlawful] activity." *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, which requires putative plaintiffs to opt out, a collective action under § 216(b) benefits and binds only those employees who affirmatively 'opt in' to the suit." *Bancroft*, 2022 WL 19762095, at *3.

In *Swales*, the U.S. Fifth Circuit Court of Appeals rejected *Lusardi*'s two-step method of 'conditional certification' and notice followed by a motion to decertify. *Loy*, 71 F.4th at 336 (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). "Instead of adherence to *Lusardi*, or any test for 'conditional certification,' a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Swales*, 985 F.3d at 441. "If answering the merits questions 'requires a highly individualized inquiry into each potential opt-in's circumstances,' then the employees are likely not similarly situated." *Loy*, 71 F.4th at 336 "It is the plaintiffs' burden to establish that they are similarly situated." *Id.*

"Pre-*Swales*, district courts following the *Lusardi* approach considered three factors when deciding whether employees were 'similarly situated': (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* (cleaned up). "While *Swales* rejected *Lusardi*'s two-step method . . . , courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities

between *Swales* and *Lusardi*'s second step." *Id.* at 336–37. "That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply: 'The bottom line is that the district court has broad, litigation-management discretion, cabined by the FLSA's similarly situated requirement.'" *Id.* (quoting *Swales*, 985 F.3d at 443) (cleaned up).

### III.   ANALYSIS

As mentioned previously, defendants argue that plaintiffs are independent contractors who do not have standing to raise claims for overtime pursuant to the FLSA.[21] To determine if a worker is an employee or independent contractor, courts in the Fifth Circuit examine five non-exhaustive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). "No single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id.* (emphasis in original).

When determining whether to certify a collective action in a misclassification action, district courts are to consider "whether the economic-realities test could be applied on a collective basis." *Swales*, 985 F.3d at 442. Accordingly, at this stage, the Court need not decide whether plaintiffs or the other DSWs are employees protected

---

[21] R. Doc. No. 32, at 9.

by the FLSA, but rather, the Court must decide whether determining if the DSWs are employees requires a highly individualized inquiry. *See Sterling v. Greater Houston Transportation Co.*, No. CV H-20-910, 2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021) ("The issue at this stage is not whether [the plaintiff] will ultimately prevail in proving all the elements of the alleged FLSA violation, including employment status, but whether the court can determine if the named plaintiffs and proposed class members are employees or independent contractors on a class-wide basis.").

Plaintiffs argue that the Court could determine employment status on a class-wide basis.[22] More specifically, plaintiffs contend that all proposed class members were hourly DSWs, they were subject to identical policies and procedures, they were paid an equal rate, and they performed the same services.[23]

In response, defendants argue that Warren is differently situated from the other DSWs and certain defenses apply only to her claims.[24] Defendants contend that, unlike the DSWs providing caregiving services in clients' homes, Warren also performed supervisory duties in Care and Development's administrative office.[25] Defendants argue that Warren had the authority to retain or discharge workers, she could access the database to edit workers' time, and she generated many of the documents upon which plaintiffs now rely.[26] Defendants also argue that, when

---

[22] R. Doc. No. 25-1, at 9.
[23] *Id.* at 9–12.
[24] R. Doc. No. 32, at 11.
[25] *Id.* at 12.
[26] *Id.*

7

Warren separated from Care and Development, she physically removed certain office records and locked the Care and Development computer system.[27] Defendants contend that this constitutes spoliation of evidence.[28] Defendants further argue that they may invoke defenses related to Warren's alleged use of multiple social security numbers to receive payment during her time working for Care and Development.[29]

In response, plaintiffs argue that Warren is seeking overtime only for work she performed as a DSW.[30] Plaintiffs also argue that the application of some individualized defenses would not preclude certification.[31]

The evidence presented shows that Warren's employment setting differed from that of the other DSWs, even if she performed some of the same work as the DSWs. Because Warren's role is distinct from the role of the other DSWs, the economic realities analysis may be different for Warren than for the other DSWs. Furthermore, as noted above, certain defenses may only be applicable to Warren's claims. Therefore, collective action certification, with Warren as a representative plaintiff, is inappropriate.

In their reply, plaintiffs suggested "[e]ven if this Court were to find that [ ] Warren is not similarly situated for the purposes of the proposed class [ ] the same cannot be said for [ ] Badon; he can be the class representative alone, if this Court

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] R. Doc. No. 33, at 5.
[31] *Id.* at 7.

8

deems [ ] Warren not similarly situated."[32] Plaintiffs have demonstrated that Badon is similarly situated to the other DSWs because he and the other DSWs had the same job title, had the same job description, performed the same work, were paid equal hourly wages, and were covered by the same policies. Additionally, defendants have not argued that any individualized defenses will apply to Badon. Accordingly, if the Court determines that certification is appropriate, Badon could be named lead plaintiff and Warren permitted to proceed individually. *See Torres v. Chambers Protective Services, Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at * 11 n.7 (N.D. Tex. Aug. 5, 2021) ("Where a court finds that a case may proceed as a collective action but that the named lead plaintiff is not an appropriate representative of the potential plaintiffs, the Court may allow counsel to offer another suitable plaintiff to lead the collective action and must allow the original lead plaintiff to proceed individually.") (citing *Portillo v. Permanent Workers, L.L.C.*, 662 Fed. Appx. 277, 281 (5th Cir. 2016)).

In their motion, plaintiffs state that "two other putative class members have indicated their desire to pursue their own overtime claims."[33] However, plaintiffs do not identify the potential opt-in plaintiffs with any specificity, nor do plaintiffs provide affidavits from the potential opt-in plaintiffs. Therefore, defendants argue that certification is not appropriate. In support of their argument, defendants cite *Morales v. Thang Hung Corp.*, No. CIV. A. 4:08-2795, 2009 WL 2524601 (S.D. Tex. Aug. 14, 2009). In *Morales*, the plaintiff said that three employees were interested in

---

[32] *Id.* at 5.
[33] R. Doc. No. 25-1, at 15.

9

joining the collective action and one employee had indicated in writing that he wished to join the collective action. *Id.* at *3. The court denied certification, explaining that "[o]ne affidavit is not enough to establish that the collective action, along with the expensive notice it requires, is the most efficient way to proceed with litigation." *Id.*

In reply, plaintiffs argue that Badon's presence in the lawsuit indicates that more than one DSW is interested in joining this litigation.[34] Plaintiffs suggest that, from Badon's presence in the litigation, the Court can assume that other DSWs will be interested in joining the lawsuit once they receive notice.[35] However, as explained above, because Warren is not similarly situated to the other DSWs, Badon is left as the sole identified plaintiff in the proposed collective action.

As noted by defendants, many courts in the Fifth Circuit have required plaintiffs to identify other potential opt-in plaintiffs who wish to join the litigation prior to granting certification. *See, e.g.*, *Berridge v. Pediatric Home Healthcare, LLC*, No. SA-20-CV-01025-XR, 2021 WL 4083407, at *2 (W.D. Tex. Sept. 8, 2021) (denying certification because the plaintiff had not identified another potential opt-in plaintiff); *Hargrave v. AIM Directional Servs., LLC*, No. 2:18-CV-449, 2019 WL 13092226, at *4 (S.D. Tex. Aug. 16, 2019) (denying certification where plaintiff relied solely on his own declaration that other workers would want to participate in the lawsuit); *Carey v. 24 Hour Fitness USA, Inc.*, No. CIV.A. H-10-3009, 2012 WL 4857562, at *3 (S.D. Tex. Oct. 11, 2012) (denying certification where there was no

---

[34] R. Doc. No. 33, at 5.
[35] *Id.*

10

showing that other potential plaintiffs were interested in joining and therefore the plaintiff had not demonstrated that the expense and effort of notice was warranted); *see also Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711, 722 (E.D. La. 2015) (Brown, J.) (granting certification and distinguishing from *Carey* where the plaintiff identified three other individuals who wished to opt in to the lawsuit).

While courts in the Fifth Circuit have not uniformly required affidavits from proposed plaintiffs to certify a collective action,[36] *Swales* clearly instructs courts to avoid "stir[ring] up litigation" and to "rigorously scrutinize the realm of 'similarly situated' workers" when determining whether to certify a collective action. *Swales*, 985 F.3d at 434. Accordingly, the requirement that plaintiffs identify members of the proposed class seems to apply with even greater force after *Swales*. *See Spillers v. Louisiana PHS, L.L.C.*, No. CV 3:21-00762, 2022 WL 1675950, at *9 (W.D. La. May 10, 2022), *report and recommendation adopted*, No. CV 3:21-00762, 2022 WL 1664120 (W.D. La. May 25, 2022) ("While the court cannot and does not require plaintiff to identify every prospective collective action member prior to notice, *Swales* [ ] strongly suggest[s] that some showing is required. Otherwise, the court simply will be stirring up litigation.").

While a section of this court has permitted plaintiffs to proceed as a collective without identifying other potential plaintiffs, it did so where the plaintiffs provided an explanation for their failure to identify other potential plaintiffs. *Hamm v. Acadia*

---

[36] *See Aboin v. IZ Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *5 (S.D. Tex. June 29, 2021) (explaining that *Swales* does not require an affidavit to meet its standard).

11

*Healthcare Co.*, No. CV 20-1515, 2022 WL 2713532, at *4 (E.D. La. July 13, 2022) (Morgan, J.) (granting certification where the plaintiff's employment had been terminated for over two years, she had not been able to remain in contact with other potential members, and the court had denied the plaintiff's request for contact information for potential collective members). Plaintiffs have offered no explanation for their failure to identify proposed class members. Therefore, the Court, applying its broad litigation-management discretion, finds that certification is not warranted.[37]

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that plaintiffs' motion to certify a collective action class is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' request for oral argument is **DENIED**.

New Orleans, Louisiana, June 26, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[37] Because the Court finds that certification is not appropriate, the Court will not address defendants' arguments with respect to plaintiffs' proposed notice.